# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

September 5, 2023

Lyle W. Cayce
Clerk

No. 22-30184

Ellis Ray Hicks,

*Plaintiff—Appellee*,

*versus*

James M. LeBlanc, *Secretary, Department of Public Safety and Corrections, individually and in his official capacity*; Terry Lawson, *Department of Corrections employee, individually and in his official capacity*; Tracy DiBenedetto; Sally Gryder; Angela Griffin,

*Defendants—Appellants*.

---

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:19-CV-108

---

Before Higginbotham, Southwick, and Willett, *Circuit Judges*.
Patrick E. Higginbotham, *Circuit Judge*:

We are seeing with some frequency claims of "overdetention," now a euphemism for prisoners illegally incarcerated beyond the terms of their sentence. Unfortunately, many of these cases have come to this Court in recent years. This is yet another from Louisiana.

Ellis Ray Hicks brings claims under 42 U.S.C. § 1983 and Louisiana state law against Louisiana Department of Public Safety and Corrections

No. 22-30184

("DPSC") supervisory officials Tracy DiBenedetto, Angela Griffin, and Sally Gryder in their individual capacities alleging that he was wrongfully detained for sixty days after the expiration of his prison sentence. The district court denied qualified immunity at the motion-to-dismiss stage for DiBenedetto and Gryder but found Griffin enjoys qualified immunity. DiBenedetto and Gryder timely appealed. We conclude in this interlocutory appeal that the district court properly denied qualified immunity and AFFIRM.

## I.

### A.

In July 2016, Hicks was arrested in Louisiana for a parole violation stemming from a conviction in Arkansas. In January 2017, after serving 163 days of pretrial detention, Hicks pled guilty to the parole violation and was sentenced to four years of hard labor with credit for time served in Arkansas. Hicks alleges that he should have been released on February 24, 2018.

In February 2017, Terry Lawson, a DPSC employee, calculated Hicks' sentence to end on February 28, 2018. Hicks alleges that several weeks later, Gryder ordered Lawson to recalculate the sentence. Lawson then came up with a new date of May 23, 2019, essentially removing the credit for time served in Arkansas. Although Gryder reviewed the sentence and calculation, she did not instruct Lawson to include the credit for time served in Arkansas.

When Hicks questioned the new release date, Brian Flynn, Claiborne Parish Clerk of Court, told him he would not get credit for time served "without an official document from the State of Arkansas showing the credits that you are due." Subsequently, Lawson privately informed Hicks that he was not qualified to receive credit for time served.

No. 22-30184

With the help of his family and friends, in June 2017 Hicks obtained a letter from the Arkansas Department of Corrections confirming his time served in Arkansas, prompting Gryder to order Lawson to recalculate the sentence. Lawson then came up with yet another new date, which Hicks alleges still did not include time in pretrial detention in Arkansas. Seeking to assure his time was properly being included, in July 2017 Hicks moved to clarify the record in the Louisiana Second Judicial District Court. Several weeks later, the sentencing judge again ordered that Hicks' sentence be "four (4) years of hard labor with credit for all time served, including the time served in the State of Arkansas." In September 2017, DiBenedetto reviewed a filing by Hicks under Louisiana's Administrative Remedy Procedure ("ARP") asking that his 110 days in Arkansas pretrial detention be included in his time calculation. A short time later, DiBenedetto informed Hicks that the current calculation was correct and would not be modified.

Two months later, in November 2017, Lawson asked DiBenedetto to instruct him as to whether he should include the additional time in Hicks' time calculation. DiBenedetto informed Lawson that whether to include the 110 days of pretrial detention in the calculation depended on whether Hicks was being held "under the same circumstances" or if Louisiana had a "hold" on him. Lacking clarity, Lawson recalculated the release date to be July 11, 2018, and two days later sent a follow-up email to DiBenedetto, asking whether there was "any ruling" on including the 110 days in Hicks' time calculation. DiBenedetto did not answer the question, but rather asked Lawson to determine whether there was a "hold" on Hicks from Louisiana before including the 110 days of pretrial detention in the recalculation of his sentence.

In January 2018, Hicks filed another ARP concerning Lawson's refusal to consider his time-served credit. Hicks then moved in Louisiana state court to enforce the sentencing judge's order, which was granted on

January 12, 2018. In a February 2018 state habeas hearing, the judge and the District Attorney confirmed that the sentence included time served in Arkansas, but also advised that the court could do nothing else to help him and that he needed to file suit in Baton Rouge against DPSC. During this time, Lawson told Hicks' friends and family that "an awful lot of people were calling him" about Hicks, that "anyone who messes with me gets longer time," and that "if someone keeps bothering me about their computations they can do more time."

In April 2018, Hicks' attorney called Lawson inquiring why Hicks had not been released. In a recorded phone call, Lawson advised the attorney that "judges have no say whatsoever to us applying our time comp laws" and confirmed that Hicks' sentence excluded time for which he served in Arkansas. Later that month, Gryder asked Lawson to call the Faulkner County Sheriff's Office to determine how much time Hicks spent in pretrial detention in Arkansas. Lawson then called and informed Griffin that Hicks "had enough credit to get released." Gryder then manually recalculated Hicks' sentence, inputting dates for all time served in Arkansas. Although Hicks was eligible for immediate release, Gryder changed his release date from April 20, 2018 to April 25, 2018. Ending this saga, Hicks was released from prison on April 25, 2018.

## B.

Later that year, alleging that he was unlawfully detained for 60 days after the expiration of his prison sentence, Hicks filed suit under 42 U.S.C. § 1983, bringing claims against DPSC, James LeBlanc, individually and in his official capacity as the DPSC Secretary, and Lawson, individually and in his

official capacity as a DPSC employee.[1] In August 2019, DPSC, LeBlanc, and Lawson moved to dismiss, asserting that: (1) monetary damages were barred by Eleventh Amendment sovereign immunity, (2) Hicks' claims were barred under *Heck v. Humphrey*,[2] and (3) LeBlanc and Lawson were entitled to qualified immunity. The district court: (1) dismissed the claims for monetary damages against LeBlanc and Lawson in their official capacities under sovereign immunity, (2) held that the *Heck* doctrine did not bar Hicks' claims, and (3) held that LeBlanc and Lawson were not entitled to qualified immunity.[3] This Court reversed the decision denying LeBlanc's qualified immunity but affirmed the district court's rejection of Lawson's qualified immunity assertion.[4]

Following discovery, Hicks filed a Second Amended Complaint ("SAC"), the operative pleading here, asserting claims against Lawson and LeBlanc, adding DiBenedetto, Gryder, and Griffin as defendants, and dropping DPSC as a defendant.[5] DiBenedetto, Gryder, and Griffin moved to dismiss, asserting that *Heck v. Humphrey* bars Hicks' § 1983 claims and that they are entitled to the defense of qualified immunity for the individual

---

[1] *Hicks v. Dep't of Pub. Safety & Corr.*, No. 19-CV-108, 2020 WL 428116, at *2 (M.D. La. Jan. 27, 2020). Hicks asserted Fourteenth Amendment due process and First Amendment free speech violations, a *Monell* failure to train/supervise claim, false imprisonment, negligence, *respondeat superior*, indemnification, and a violation of Hicks' rights under the Louisiana Constitution. *Id.* at *2.

[2] 512 U.S. 477 (1994).

[3] *See generally Hicks*, 2020 WL 428116.

[4] *See generally Hicks v. LeBlanc*, 832 F. App'x 836 (5th Cir. 2020) (unpublished) (per curiam).

[5] Hicks sued DiBenedetto, Gryder, and Griffin in their individual capacities, asserting Fourteenth Amendment due process violations, a *Monell* failure to train/supervise claim (against Griffin alone), false imprisonment, negligence, and a violation of Hicks' rights under the Louisiana Constitution.

No. 22-30184

capacity claims. The district court denied qualified immunity as to DiBenedetto and Gryder and granted it as to Griffin.[6] DiBenedetto and Gryder ("Appellants") timely appealed.

## II.

Under the collateral order doctrine, we may review the denial of a motion to dismiss based on qualified immunity immediately.[7] For purposes of this appeal, we accept the factual allegations in the SAC as true.[8] When, as here, the district court denies a motion to dismiss on qualified immunity grounds, "we have jurisdiction only to decide whether the district court erred in concluding as a matter of law that officials are not entitled to [qualified immunity] on a given set of facts."[9] "We do not consider the correctness of the plaintiff's version of the facts."[10] We review a district court's denial of a motion to dismiss on qualified immunity grounds *de novo*.[11]

## III.

## A.

Appellants insist they are entitled to qualified immunity because they neither violated Hicks' constitutional rights nor acted unreasonably in light of clearly established law. We disagree.

"The doctrine of qualified immunity protects government officials

---

[6] *Hicks v. Dep't of Pub. Safety & Corr.*, 595 F. Supp. 3d 463, 467 (M.D. La. 2022).

[7] *Kinney v. Weaver*, 367 F.3d 337, 346 (5th Cir. 2004) (en banc).

[8] *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[9] *Ramirez v. Escajeda*, 921 F.3d 497, 499 (5th Cir. 2019) (quoting *Rich v. Palko*, 920 F.3d 288, 293 (5th Cir. 2019)).

[10] *Id.* at 500 (internal quotation marks and citation omitted).

[11] *See Ashcroft*, 556 U.S. at 678; *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009).

from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[12] Qualified immunity shields government officials performing discretionary functions from civil damages liability "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated."[13] "Qualified immunity includes two inquiries. The first question is whether the officer violated a constitutional right. The second question is whether the 'right at issue was "clearly established" at the time of the alleged misconduct.'"[14] We may decide which

_____

[12] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation marks omitted).

[13] *Anderson v. Creighton*, 483 U.S. 635, 638 (1987); *see also Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) ("The basic steps of our qualified-immunity inquiry are well-known: a plaintiff seeking to defeat qualified immunity must show: (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." (cleaned up)).

[14] *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019) (quoting *Pearson*, 555 U.S. at 232). We note that we have, at times, reformulated the test for qualified immunity by adding an objective-unreasonableness component. *See Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011) ("A public official is entitled to qualified immunity unless the plaintiff demonstrates that (1) the defendant violated the plaintiff's constitutional rights and (2) the defendant's actions were objectively unreasonable in light of clearly established law at the time of the violation."). But to be clear, there is no "standalone 'objective reasonableness' element to the Supreme Court's two-pronged test for qualified immunity." *Baker v. Coburn*, 68 F.4th 240, 251 n.10 (5th Cir. 2023), *as revised* (May 19, 2023). In other words, to establish a claim under § 1983, a plaintiff must: "(1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Pratt v. Harris County, Texas*, 822 F.3d 174, 180 (5th Cir. 2016) (internal quotation marks and citation omitted); *see also Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) ("Qualified immunity shields . . . state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct."); *Crittindon v. LeBlanc*, 37 F.4th 177, 185–86 (5th Cir. 2022) (noting that to determine whether the defense applies on a given set of facts, "[f]irst, [this court] ask[s] whether the officer's alleged conduct has violated a federal right. Second, [this court] ask[s] whether the right in question was clearly established at the time of the alleged violation, such that the officer was on notice of the

No. 22-30184

question of the qualified immunity analysis to address first.[15]

## B.

We begin with the second question, whether the right at issue was clearly established at the time of the alleged misconduct.[16] "In determining what constitutes clearly established law, this [C]ourt first looks to Supreme Court precedent and then to our own."[17] When there is no direct controlling authority, "this [C]ourt may rely on decisions from other circuits to the extent that they constitute a robust consensus of cases of persuasive authority."[18] Ultimately, the touchstone is "fair warning: The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'"[19] In other words, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his [or her] conduct was unlawful in the situation he [or she] confronted."[20]

---

unlawfulness of his or her conduct"), *petition for reh'g en banc denied*, 58 F.4th 844, 845 (5th Cir. 2023).

[15] *Pearson*, 555 U.S. at 242 ("[T]he judges of the district courts and the courts of appeals are in the best position to determine the order of decisionmaking that will best facilitate the fair and efficient disposition of each case.").

[16] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[17] *Shumpert v. City of Tupelo*, 905 F.3d 310, 320 (5th Cir. 2018).

[18] *Id.* (internal quotation marks and citation omitted).

[19] *Kinney*, 367 F.3d at 350 (quoting *Hope v. Pelzer*, 536 U.S. 730, 740 (2002)).

[20] *Porter*, 659 F.3d at 445.

No. 22-30184

The Fourteenth Amendment guarantees that no state may "deprive any person of life, liberty, or property, without due process of law."[21] Clear as day, the government cannot hold an inmate without the legal authority to do so, for that would "deprive" a person of his "liberty . . . without due process of law."[22] Applying this foundational concept to carceral sentences and releases, it is clearly established that inmates have the right to timely release from prison consistent with the terms of their sentences, a holding we have long-held and repeatedly reaffirmed.[23] Relevant here, the right to timely release was clearly established well before 2017.[24] And, Hicks' right to timely release was clearly established under these particular circumstances because governing law required DPSC to follow the state court's orders requiring them to credit the Arkansas time.[25]

## C.

Having established that Hicks' right to timely release was clearly established, we turn to the first question of qualified immunity: whether

---

[21] U.S. CONST. amend. XIV. § 1.

[22] *Id.*

[23] *See Parker v. LeBlanc*, 73 F.4th 400, 408 (5th Cir. 2023) ("We agree that there is sufficient clearly established law regarding the constitutional right to a timely release from prison."); *Crittindon*, 37 F.4th at 188 (noting that the Fifth Circuit "has recognized the clearly established right to timely release from prison"); *see also Porter*, 659 F.3d at 445 ("Our precedent establishes that a jailer has a duty to ensure that inmates are timely released from prison."); *Douthit v. Jones*, 619 F.3d 527, 532 (5th Cir. 1980) ("Detention of a prisoner thirty days beyond the expiration of his sentence in the absence of a facially valid court order or warrant constitutes a deprivation of due process.").

[24] *See Douthit*, 619 F.2d at 532.

[25] *See Boddye v. La. Dep't of Corr.*, 175 So. 3d 437, 441 (La. Ct. App. 1st 2015) ("It is well settled that the determination of the sentence a defendant is to serve . . . is made by the trial judge, not the defendant's custodian.").

Appellants violated Hicks' clearly established constitutional right.[26] Hicks' right to timely release is clearly established, not just as a general proposition of law, but specifically by the multiple state-court orders declaring that the Arkansas time was to be credited.

Under section 1983, "supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability."[27] Thus, a supervisory official may be held directly liable "only if he affirmatively participates in the acts that cause the constitutional deprivation."[28] A supervisor may also be liable for failure to supervise or train if "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference."[29]

Hicks invokes both theories of § 1983 liability. He argues that DiBenedetto and Gryder should be liable for directly participating in the violation of his rights, and that Appellants should be liable for their deliberate indifference to Lawson's violation of his constitutional rights. We agree.

Hicks plausibly alleges that DiBenedetto and Gryder were direct participants in violating his right to timely release from prison. According to the complaint, DiBenedetto reviewed all of Hicks' ARPs, knew he was not being credited for the Arkansas time, yet did not take any action to correct the error. Indeed, she personally informed Hicks that her (incorrect) calculation was correct and refused to modify it despite Hicks' pointing out

---

[26] *Morrow*, 917 F.3d at 874 ("The first question is whether the officer violated a constitutional right.").

[27] *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987)).

[28] *Porter*, 659 F.3d at 446.

[29] *Id.*

No. 22-30184

that his Arkansas time was not credited. And when Lawson asked DiBenedetto whether he should include the Arkansas time credits, DiBenedetto did not instruct Lawson to include the time—even though by then the state court had clarified that Hicks' Arkansas time was to be credited. Gryder, too, directly participated in Hicks' overdetention by manually altering Hicks' release date to extend the period of imprisonment despite knowing that Hicks was, at that point, already being held past the expiration of his sentence.

The alleged facts also lead to a plausible inference that Appellants, as supervisors, were deliberately indifferent to Lawson's violation of Hicks' clearly established right to timely release from prison. Deliberate indifference, of course, is a "stringent standard of fault, requiring proof that a [government] actor disregarded a known or obvious consequence of his action."[30] "For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[31]

In *Crittindon*, we held that a jury could find prison officials deliberately indifferent to the plaintiffs' right to timely release when the officials received calls from the plaintiffs' mothers about their release dates and discussed it among themselves but did nothing about it for 17 days.[32] Under those facts,

---

[30] *Porter*, 659 F.3d at 446–47.

[31] *Est. of Davis ex rel. McNully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (internal quotation marks omitted).

[32] 37 F.4th at 189.

we held, "[a] reasonable factfinder could find that their conduct sums to deliberate indifference to Crittindon and Burse's overdetention."[33]

These facts are worse than in *Crittindon*. According to the complaint, DiBenedetto and Gryder both knew—for months—that Hicks had on numerous occasions contested Lawson's failure to apply the Arkansas credit, yet neither trained nor supervised Lawson even *after* it was confirmed that the Arkansas credit was to be applied to Hicks' sentence. Indeed, when Lawson asked DiBenedetto (his supervisor) "whether he should include" the Arkansas time, DiBenedetto did not instruct Lawson to follow the court's clarifying order—indeed it appears she did not give him any training or supervision on this issue for nearly a month. DiBenedetto also did nothing in response to one of Hicks' (several) administrative grievances "specifically regarding Lawson refusing the consider [the] Arkansas time" even though, by then, multiple authorities had unequivocally stated that the Arkansas time was to be included. Worst of all, DiBenedetto knew that "DOC staff have discovered approximately one case of overdetention per week for the last nine years," with "inmates . . . sometimes incorrectly incarcerated for periods of up to a year." Yet she did nothing. As for Gryder, she too knew of Lawson's lack of training and supervision as he miscalculated—over and over again—Hicks' time credits. Importantly, upon learning that Hicks was entitled to "immediate release," she "manually changed his release date from April 20, 2018 to April 25, 2018, deliberately holding him for an additional five (5) days." On these facts, we draw the plausible inference that DiBenedetto and Gryder disregarded the "known or obvious consequence" of their failure to

---

[33] *Id.*

No. 22-30184

train and supervise Lawson.[34] The district court did not err in denying Appellants' qualified immunity defense.

## IV.

## A.

Appellants also contend that Hicks' claims are barred under the *Heck* doctrine, as they argue Hicks challenges both the validity and duration of his confinement.[35] Hicks counters that *Heck's* bar does not apply to his claims because he merely challenges his overdetention. Hicks is correct: *Heck* has no place here.

As Hemingway once said, there is no need "to write in another way what has been well written."[36] Such is the case here. In *Crittindon*, we addressed allegations that "DPSC officials, in violation of the Fourteenth Amendment, looked away from the administrative failure they knew was leaving prisoners in jail who had served their sentences."[37] As in *Crittindon*, Hicks does not challenge the validity of his sentence, merely the *execution* of his release.[38] He seeks to vindicate—not undermine—his sentence. As in

---

[34] *See Crittindon*, 37 F.4th at 186; *Parker*, 73 F.4th at 406.

[35] 512 U.S. 477 (1994).

[36] *See* Ernest Hemingway, Nobel Prize Banquet Speech (Dec. 10, 1954).

[37] *Crittindon*, 37 F.4th at 181.

[38] *Id.* at 190 (emphasis added). The Supreme Court has emphasized that it was "careful in *Heck* to stress the importance of the term 'necessarily,'" such as when the Court "acknowledged that an inmate could bring a challenge to the lawfulness of a search pursuant to § 1983 in the first instance, even if the search revealed evidence used to convict the inmate at trial, because success on the merits would not '*necessarily* imply that the plaintiff's conviction was unlawful.'" *Nelson v. Campbell*, 541 U.S. 637, 647 (2004) (quoting *Heck*, 512 U.S. at 487 n.7). "To hold otherwise," the Court continued, "would have cut off potentially valid damages actions as to which a plaintiff might never obtain

*Crittindon*, the Parties agree that Hicks was held in *excess* of his sentence.[39] And as in *Crittindon*, if Hicks were to succeed based on the period he was held beyond his original sentence, it would not invalidate the conviction or its attendant sentence.[40] *Crittindon* controls this case.[41] *Heck* is no bar here.

The other cases upon which Appellants rely, *Muhammad v. Close*,[42] and *Colvin v. LeBlanc*,[43] also miss the mark. In *Muhammad*, a prisoner had a confrontation with a prison guard, resulting in the prisoner being handcuffed and subjected to pretrial detention on charges of "Threatening Behavior."[44] After six days in mandatory detention, the prisoner was acquitted of threatening behavior but found guilty of the lesser infraction of insolence, which would not have mandated pretrial detention.[45] The prisoner subsequently filed an action under § 1983, alleging that the guard had charged him with threatening behavior and subjected him to mandatory pretrial detention in retaliation for his prior lawsuits and grievance proceedings against the guard.[46] The Supreme Court held that *Heck* did not bar the § 1983 case because the plaintiff did not challenge his insolence conviction or any subsequent detention, but only sought damages for the injuries sustained

---

favorable termination–suits that could otherwise have gone forward had the plaintiff not been convicted." *Id.*

[39] *Crittindon*, 37 F.4th at 190.

[40] *Id.*

[41] *Id.* at 190–92, *petition for reh'g en banc denied*, 58 F.4th 844, 845 (5th Cir. 2023).

[42] 540 U.S. 749 (2004).

[43] 2 F.4th 494 (5th Cir. 2021).

[44] 540 U.S. at 752.

[45] *Id.*

[46] *Id.* at 753.

during the six days of prehearing detention.[47] Thus, the plaintiff was challenging only the conduct that subjected him to unnecessary pretrial detention, and was not deemed to be seeking a judgment at odds with his conviction.[48] The Supreme Court concluded in *Muhammad* that challenges to disciplinary proceedings are barred by *Heck* only if the § 1983 action would be "seeking a judgment at odds with [the prisoner's] conviction or with the State's calculation of time to be served *in accordance with the underlying sentence*."[49] For that reason, *Muhammad* does not bar Hicks' claims because "the incarceration that matters under *Heck* is the incarceration ordered by the original judgment of conviction."[50]

*Colvin* similarly fails to support. In *Colvin*, James Colvin was sentenced to eighty years in prison after a 1983 jury conviction in Louisiana.[51] In 1986, he escaped from the Louisiana State Penitentiary, only to be recaptured and sentenced to a new federal prison term.[52] After being paroled in 2004, Colvin then robbed a bank, for which he was sentenced to a new term of imprisonment.[53] When released in 2016, DPSC officials returned him to Louisiana. While in Louisiana's custody, Colvin filed a § 1983 suit, seeking monetary damages for the "unconstitutional interruption" of his federal sentence as well as the "illegal extradition" to Louisiana and an "artificial

---

[47] *Id.* at 754-55.

[48] *Id.*

[49] *Id.* at 754–55 (emphasis added).

[50] *Id.* at 752 n.1.

[51] *Colvin*, 2 F.4th at 496.

[52] *Id.*

[53] *Id.*

extension" of his state sentence by thirty years.[54] The defendants moved to dismiss the case, arguing that the claims were barred by *Heck*, because Colvin challenged the validity and duration of his detention.[55] The district court agreed.[56] Colvin appealed, and we affirmed, holding that Colvin's claims were barred by *Heck*.[57]

However, we did not view the claim as one of unlawful overdetention. To the contrary, this Court concluded that although the district court "characterized Colvin's claim as only involving the miscalculation of his release date . . . Colvin actually challenges two independent acts: (1) the 'artificial enhancement' of his sentence, and (2) his illegal extradition."[58] We then held that "a § 1983 damages action predicated on the sentence calculation issue is barred by *Heck* because success on that claim *would necessarily invalidate the duration of his incarceration*."[59] Hicks is not challenging the number of days he was supposed to serve, but rather that he was detained longer than the proper sentence imposed.

## B.

Appellants' last contention is that *Heck* bars *any* § 1983 claim that is also cognizable in habeas at the time it accrues. In support of this argument, Appellants rely on *Preiser v. Rodriguez*,[60] which predates *Heck*. Appellants are mistaken.

---

[54] *Id.*

[55] *Id.*

[56] *Id.* at 497.

[57] *Id.* at 501.

[58] *Id.* at 499.

[59] *Id.* at 499 (emphasis added).

[60] 411 U.S. 475 (1973).

In *Preiser*, state prisoners who had lost good-time credits as a result of disciplinary proceedings brought an action under § 1983 for restoration of the credits on the ground that the proceedings violated their due process rights.[61] The prisoners would have been entitled to immediate release from prison if their good-time credits had been restored.[62] The Court held that the claims thus fell within the core of habeas corpus and therefore had to be brought under habeas, explaining that that the Great Writ is the "specific instrument to obtain release" from unlawful imprisonment when a prisoner challenges "the fact or duration of his confinement."[63]

In a series of cases after *Preiser*, the Supreme Court articulated the reach of its pronouncement, sorting state prisoner claims that fell within the "core of habeas" and were required to be brought as a habeas action and those which did not. In *Wolff v. McDonnell*, the Court reiterated that claims for restoration of good-time credits were in the core of habeas and therefore outside the scope of § 1983.[64] Then the Court revisited *Preiser* in *Heck* when it held that a § 1983 complaint must be dismissed if judgment for the plaintiff would undermine the validity of his conviction or sentence.[65] In *Edwards v. Balisok*, the Court next held that a state prisoner's challenge under § 1983 that "would necessarily imply the invalidity of the disciplinary hearing and the resulting [deprivation of good-time credits]" fell within habeas's exclusive domain.[66] And it later clarified *Edwards* in *Muhammad*, holding that

---

[61] *Id.* at 476–77.

[62] *Id.* at 500.

[63] *Id.* at 489–500.

[64] 18 U.S. 539, 554 (1974).

[65] 411 U.S. at 486–87.

[66] 520 U.S. 641, 644–48 (1997).

such challenges to disciplinary proceedings are barred by *Heck* only if the § 1983 action would be "seeking a judgment at odds with [the prisoner's] conviction or with the State's calculation of time to be served."[67]

The upshot of these cases is that challenges to the validity of any confinement or to particulars affecting its duration fall within the "core" of habeas corpus and are barred under this line of precedent;[68] "[b]y contrast, constitutional claims that merely challenge the conditions of prisoner's confinement, whether the inmate seeks monetary or injunctive relief, fall outside of that core and may be brought pursuant to § 1983 in the first instance."[69] *Preiser* and its progeny do not implicate the claims here because they are specifically *beyond* the "core" of habeas, as Hicks' claims challenge his overdetention, and by its terms do not implicate the fact or duration of his confinement.[70]

The implications of Appellants' arguments expose their weakness. Applying *Heck* to any case also cognizable under habeas would obviate many § 1983 remedies the Supreme Court continues to recognize, such as those for

---

[67] 540 U.S. at 754–55.

[68] *Hill v. McDonough*, 547 U.S. 573, 579 (2006); *see also Cook v. Tex. Dep't. of Crim. Just. Transitional Plan. Dep't.*, 37 F.3d 166, 168 (5th Cir. 1994) ("The core issue in determining whether a prisoner must pursue habeas corpus relief rather than a [§ 1983] action is to determine whether the prisoner challenges the 'fact or duration' of his confinement or merely the rules, customs, and procedures affecting 'conditions' of confinement." (quoting *Spina v. Aaron*, 821 F.2d 1126, 1128 (5th Cir. 1987)).

[69] *Nelson*, 541 U.S. at 643; *see also Hill*, 547 U.S. at 579; *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005) ("Because neither prisoner's claim would necessarily spell speedier release, neither lies at 'the core of habeas corpus.'" (quoting *Preiser*, 411 U.S. at 489)).

[70] The Supreme Court has not extended *Heck* as far as Appellants suggest. No published precedent from this Court supports it. And here, the legality of the sentence and of detention was never at issue. Hicks was released from custody not by a writ, but by a phone call to the Faulkner County Sheriff's Office–habeas has no purchase in this situation. Habeas had no role here. Hicks was released without the aid of any writ.

First Amendment retaliatory arrest,[71] malicious prosecution,[72] and Fourth Amendment unlawful pretrial detention,[73] among others. Expanding *Heck* as Appellants ask is a request that would overturn a wealth of this Court's precedent on those subjects.[74]

In sum, requiring overdetained plaintiffs to rely on state habeas would, in practice, deprive them of a remedy under the federal Constitution. Consider the following: Louisiana requires prisoners to avail themselves of its Administrative Remedy Process, which can take up to 90 days,[75] before asserting the required state habeas claim.[76] The habeas process can take months, all the while the state can defeat a favorable outcome for the plaintiffs by releasing the prisoners during the pendency of the habeas proceedings, as doing so would leave the prisoner without a cognizable § 1983 claim. In other words, under Appellants' conception of *Heck*, the state can continue to detain prisoners for months past the expiration of their duly imposed sentences without consequence under the federal Constitution. This effectively utilizes the filing of state habeas proceedings as a cover for Louisiana's systemic failures. That, quite simply, is not the law. The district court did not err in concluding that Hicks' claims were not barred by *Heck*.

---

[71] *See Nieves v. Bartlett*, 139 S. Ct. 1715, 1723 (2019); *see also Lozman v. City of Riviera Beach, Fla.*, 138 S. Ct. 1945, 1955 (2018).

[72] *See McDonough v. Smith*, 139 S. Ct. 2149, 2156 (2019).

[73] *See Manuel v. City of Joliet, Ill.*, 580 U.S. 357 (2017).

[74] *See, e.g.*, *Terwilliger v. Reyna*, 4 F.4th 270, 277 (5th Cir. 2021) (considering a § 1983 suit for unlawful arrests without probable cause following the shootout at Twin Peaks restaurant in Waco).

[75] LA. ADMIN CODE TIT. 22, § 325(J)(1)(c) (2017).

[76] "No prisoner suit shall assert a claim under state law until such administrative remedies as are available are exhausted." LA. STAT. ANN. § 15:1184.

No. 22-30184

## V.

"There isn't always an explanation for everything."[77] Indeed, as our Court remains plagued by claims arising from inexplicable and illegal overdetention in Louisiana prisons, explanations scarcely arise, let alone satisfy scrutiny upon our review.[78] The problem is endemic in Louisiana, where the process for calculating release dates is so flawed (to put it kindly) that roughly one in four inmates released will have been locked up past their release dates—for a collective total of 3,000-plus years.[79]

Appellants are not entitled to qualified immunity and these claims are not barred by the *Heck* doctrine.

We AFFIRM.[80]

---

[77] Ernest Hemingway, A FAREWELL TO ARMS 81 (1929).

[78] *See Crittindon*, 37 F.4th at 183.

[79] Mariah Timms, *Louisiana Prisons Hold Inmates Past Their Release Dates, Justice Department Finds*, WALL ST. J. (Jan. 25, 2023); Kanishka Singh, *U.S. finds Louisiana deliberately kept inmates past release date*, REUTERS (Jan. 25, 2023); Lea Skene & Jacqueline DeRoberts, *State corrections overdetention woes, known since 2012, cost state millions, lawyer alleges*, THE ADVOCATE (Feb. 6, 2020).

[80] Although the order appealed from is the denial of qualified immunity to just DiBenedetto and Gryder, all defendants filed a notice of appeal. Because these other defendants have not appealed a final judgment or an order appealable under the collateral doctrine, we DISMISS the appeal of defendants James M. LeBlanc, Terry Lawson, and Angela Griffin for lack of appellate jurisdiction. 28 U.S.C. § 1291. We decline to exercise pendent appellate jurisdiction over their appeal because the issues they raise are not inextricably intertwined with the denial of qualified immunity. *See Gros v. City of Grand Prairie*, 209 F.3d 431, 436–37 (5th Cir. 2000).